IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRACY HARRIS,

Plaintiff,

v.

TRANSUNION, LLC,

Defendant.

CIVIL ACTION FILE NO.:

1:25-cv-192-MLB-JKL

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This is a consumer case arising under the Fair Credit Reporting Act ("FCRA"). The case is before the Court on Defendant Trans Union, LLC's motion for judgment on the pleadings [Doc. 8], its motion to stay [Doc. 10], Plaintiff Tracy Harris's motion for leave to amend [Doc. 11], and Plaintiff's notice of filing a proposed second amended complaint [Doc. 14].

For the reasons that follow, it is **RECOMMENDED** that Defendant's motion for judgment on the pleadings be **GRANTED** and that Plaintiff's motion for leave to amend be **DENIED**, but that Plaintiff be given **one, final opportunity** to move for leave to file an amended complaint. It is **ORDERED** that Plaintiff's second amended complaint be **STRICKEN**. Defendant's motion to stay is **GRANTED**.

## I. BACKGROUND

Plaintiff filed this Fair Credit Reporting Act ("FCRA") case on December 6, 2024, in the Superior Court of Gwinnett County. [*See* Doc. 1-1.] Following service, Defendant removed the action to this Court on January 16, 2025 [Doc. 1], and on January 23, 2025, it answered the complaint [Doc. 3].[1]

In that complaint, Plaintiff alleges that around November 25, 2024, he disputed the accuracy of the information that Defendant, a consumer reporting agency ("CRA"), maintained in his consumer credit file. (Compl. [Doc. 1] ¶¶ 8, 9.) More specifically, Plaintiff complained that three American Express accounts (the "Accounts") had "materially inaccurate and incomplete information," which Plaintiff explains were "the omission of payment histor[ies] reflecting consistent and timely payments made by Plaintiff from the [A]ccounts' inception in 2022 through most of 2024." (*Id.* ¶¶10-11.) Plaintiff does not appear to dispute that he failed to make payments on the accounts starting, at latest, sometime in 2024; that

---

[1] Plaintiff has been a serial filer of consumer cases of late. *See, e.g.*, *Harris v. Midland Credit Mgmt., Inc.*, No. 1:24-cv-5355 (N.D. Ga.); *Harris v. CKS Prime Invs., LLC*, No. 1:24-cv-3284 (N.D. Ga.); *Harris v. Midland Credit Mgmt. Inc.*, No. 1:24-cv-1073 (N.D. Ga.); *Harris v. FBCS Inc.*, No. 1:24-cv-0970 (N.D. Ga.); *Harris v. Transworld Sys. Inc.*, No. 1:23-cv-5253 (N.D. Ga.); *Harris v. Experian Info. Sols., Inc.*, No. 1:23-cv-3742 (N.D. Ga.); *Harris v. Experian Info. Sols.*, No. 1:23-cv-3201 (N.D. Ga.); *Harris v. Hunter Warfield, Inc.*, No. 1:23-cv-1379 (N.D. Ga.); *Harris v. FBCS, Inc.*, No. 1:23-1234 (N.D. Ga.); *Harris v. Equifax, Inc.*, No. 1:23-cv-0985 (N.D. Ga.).

the Accounts were sent to collection and charged off; that the amounts Defendant reported as his delinquencies were accurate; or that he has made any further payments on the Accounts (or has plans to). (*See generally*, Compl.)

Plaintiff alleges that Defendant forwarded the dispute to American Express, but that after concluding its reinvestigation, Defendant failed to correct, delete, or modify the disputed information in Plaintiff's consumer file and, instead, continued to provide credit reports that did not specifically include his payment histories on the Accounts prior to his delinquencies in 2024. (Compl. ¶¶ 12-16.)

Based upon the foregoing, Plaintiff brings four FCRA claims:

- under 15 U.S.C. § 1681e(b), for Defendant's alleged failure to ensure the maximum possible accuracy of the information contained in his consumer file (Compl., Count I);
- under § 1681i(a)(1)(A), for Defendant's alleged failure to conduct a reasonable reinvestigation following his dispute (*id.*, Count II);
- under § 1681g(a)(1), based upon Defendant's failure to include the payment history in its reporting about the Accounts when it disclosed the information in its credit file to Plaintiff (*id.*, Count III); and
- under § 1681s-2(b), also for failing to include Plaintiff's full payment history in its reporting on the Accounts or deleting all of the Accounts' information from his credit file (*id.*, Count IV).

Plaintiff seeks damages for both willful and negligent violations of the FCRA, as well as for injuries such as "economic loss, reputational damage, and emotional distress." (*Id.*, Count V.)

## II. MOTION FOR JUDGEMENT ON THE PLEADINGS

Defendant moves for judgment on the pleading as to all of Plaintiff's claims. [Docs. 8, 9.[2]] The primary thrust of its arguments for dismissal is that Plaintiff has not alleged any inaccuracy in Defendant's reporting about the Accounts other than the omission of Plaintiff's historical payment information, and that the omission of such historical payment information is not actionable

[2] Defendant filed its memorandum in support of its motion in a separate docket entry, along with its exhibit—a copy of its credit file for Plaintiff as it pertains to the three Accounts. [*See* Docs. 9 (memo.), 9-1 (exhibit).] While a court may not normally consider exhibits on a motion to dismiss or for judgment on the pleadings without converting that motion into a motion for summary judgment, it may do so if the exhibits are central to the plaintiff's claims and their authenticity is not challenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134) (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). The credit file snapshot at issue here is central to Plaintiff's claims—showing as they do what Defendant reported about the account—and Plaintiff has not challenged their authenticity; therefore, the undersigned will consider it in resolving the present motion. *See Porter v. Experian Info. Servs., Inc.*, No. 1:21-CV-0453-SDG-RGV, 2021 WL 5068262, at *4 (N.D. Ga. Oct. 30, 2021), *report and recommendation adopted sub nom. Porter v. Experian Info. Servs., LLC*, 2022 WL 887288 (N.D. Ga. Jan. 27, 2022); *Ming v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-3396-TCB-RGV, 2018 WL 3702454, at *1 n.3 (N.D. Ga. Apr. 23, 2018), *report and recommendation adopted*, 2018 WL 3702427 (N.D. Ga. May 15, 2018).

under the FCRA, rendering his §§ 1681e(b) and 1681i claims meritless. [Doc. 9 at 8-16.] Defendant also argues that Plaintiff's §§ 1681g and 1681s2-b claims fail as a matter of law. [*Id.* at 16-18.] Plaintiff has not responded to Defendant's arguments, but has instead filed a motion for leave to amend, as well as a second proposed amended complaint. [Docs. 11, 14.] While Plaintiff's failure to respond would typically make the motion unopposed, *see* LR 7.1B NDGa., courts also do not generally grant a motion to dismiss based solely on a *pro se* plaintiff's failure to respond, *see Clark v. Ocwen Loan Servicing*, No. 1:14-CV-4021-TCB-AJB, 2015 WL 11438602, at *4 (N.D. Ga. July 30, 2015) (collecting authority). As a result, the Court will address the merits of the motion below.

**A. Standard of Review**

A motion for judgment on the pleadings is subject to the same legal standards as a Rule 12(b)(6) motion to dismiss. *Roma Outdoor Creations, Inc. v. City of Cumming, Ga.*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008). Thus, "[j]udgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted). As with a Rule 12(b)(6) motion, the Court accepts as true all material facts alleged in the non-moving party's pleading, and views those facts in the light most favorable

to the non-moving party. *Id.* "Dismissal is not appropriate unless the complaint lacks sufficient factual matter to state a facially plausible claim for relief that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Jiles v. United Parcel Serv., Inc.*, 413 F. App'x 173, 174 (11th Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While it need not provide "detailed factual allegations," a complaint must provide factual allegations sufficient to plausibly set forth a plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555. Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court is not required to accept as true legal conclusions couched as factual statements, *Iqbal*, 556 U.S. at 678, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," as required by Rule 8(a)(2). *Id.* at 679 (internal quotation marks, bracket, and citation omitted). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted.

*Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**B. Analysis**

The Court begins its analysis with Plaintiff's §§ 1681e(b) and 1681i claims, before turning to his §§ 1681g and 1681s2-b claims.

**1. Defendant's Reporting was Accurate for Purposes of Plaintiff's §§ 1681e(b) and 1681i Claims**

In general, the FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). To achieve this purpose, the FCRA places distinct obligations on three types of entities: CRAs, users of credit reports, and furnishers of information to CRAs. *Chipka v. Bank of Am.*, 355 F. App'x 380 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1682s-2). As noted, Plaintiff has alleged that Defendant is a CRA.

Starting with Plaintiff's first claim, § 1681e(b) of the FRCA provides that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a

claim for relief under that section, the Eleventh Circuit requires that a plaintiff plead (1) that a CRA published an inaccurate consumer report to a third party; (2) that it failed to follow reasonable procedures to ensure maximum possible accuracy of its reports; and (3) its failure to follow reasonable procedures caused damages to the plaintiff. *See Ray v. Equifax Info. Servs.*, LLC, 327 F. App'x 819, 826 (11th Cir. 2009). Accordingly, "[i]n order to make out a prima facie violation of [15 U.S.C. § 1681e(b)], the Act implicitly requires that a consumer must present [allegations] tending to show that a [CRA] prepared a report containing 'inaccurate' information." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *see also see also Bailey v. Equifax Credit Info. Servs., Inc.*, No. 1:14-cv-797-MHC-JCF, 2016 WL 11540113, at *17 (N.D. Ga. Nov. 28, 2016) (holding that a "prerequisite to a cause of action under § 1681e(b)" is that a CRA "published an inaccurate credit report to any third party") (citing *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007)), *report and recommendation adopted*, 2017 WL 10728913 (N.D. Ga. Jan. 9, 2017). And without allegations identifying "how [a defendant's] reports were inaccurate," a plaintiff's § 1681e(b) claim is subject to dismissal. *See Saint-Cyr v. Equifax Info. Servs., LLC,* No. 1:24-CV-3127-TRJ-CMS, 2025 WL 432832, at *5 (N.D. Ga. Jan. 8, 2025) (citing *Meeks v. Equifax Info. Servs., LLC*, No. 1:18-cv-3666-TWT-WEJ, 2019 WL 1856411, at *4

(N.D. Ga. Mar. 4, 2019) and *Runion v. Bernard*, No. 2:20-cv-718-JLB-MRM, 2022 WL 18492498, at *7 (M.D. Fla. Jan. 17, 2022)), *report and recommendation adopted*, 2025 WL 945581 (N.D. Ga. Feb. 13, 2025).

Meanwhile, with regard to Plaintiff's second claim, "§ 1681i(a) provides that when a consumer disputes the accuracy of information contained in a consumer file, the CRA 'shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file[.]'" *Her v. Equifax Info. Servs., LLC*, No. 1:18-CV-05182-CC-RGV, 2019 WL 4295280, at *5 (N.D. Ga. July 12, 2019) (cleaned up) (quoting *Alexander v. Certegy Check Servs., Inc.*, No. 8:16-CV-859-17JSS, 2016 WL 7478961, at *2 (M.D. Fla. Dec. 29, 2016) and 15 U.S.C. § 1681i(a)(1)(A)). To state a claim against a CRA under this subsection, then, a plaintiff:

> must plausibly allege that (1) his consumer file contains inaccurate or incomplete information; (2) he notified [the CRA] of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) [the CRA] failed to respond or conduct a reasonable reinvestigation of the disputed item(s); and (5) plaintiff sustained damages caused by [the CRA].

*Byrd v. Equifax Consumer Servs., LLC*, No. 1:19-CV-4417-CAP-RGV, 2019 WL 11343566, at *3 (N.D. Ga. Nov. 14, 2019) (cleaned up) (collecting cases), *report and recommendation adopted*, 2019 WL 11422015 (N.D. Ga. Dec. 11, 2019); *see also Solus*

*v. Regions Bank*, No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062, at *4 (N.D. Ga. July 17, 2020) (collecting cases). Thus, as before, to establish a violation of the foregoing provision, a plaintiff must provide a showing that Defendant "reported or maintained inaccurate information." *Her*, 2019 WL 4295280, at *5 (collecting cases).

In terms of assessing whether a report is "accurate," although the FCRA requires that CRAs "follow reasonable procedures" to ensure "maximum possible accuracy" of information contained in consumer reports, *see* 15 U.S.C. § 1681e(b), the Eleventh Circuit has held that, pursuant to this standard:

> information must be [both] factually true and also unlikely to lead to a misunderstanding. [Thus], a report that contains factually incorrect information is plainly inaccurate under the [FCRA]. So too for a report that contains factually correct information but nonetheless misleads its users as to its meaning or implication.

*Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). The Circuit Court went on to explain that:

> when evaluating whether a report is accurate under the Act, we look to the objectively reasonable interpretations of the report. If a report is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, it is not maximally accurate. On the other hand, the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading.

*Id.* at 1252. Importantly, under this standard, while a CRA has a responsibility to make reasonable efforts to report information on a consumer's credit history accurately, it also "has no duty to report only that information which is favorable or beneficial to the consumer." *Cahlin*, 936 F.2d at 1158.[3, 4] As the Eleventh Circuit explained in *Cahlin*, among the purposes of the FRCA, in addition to ensuring the "fair and equitable" treatment of consumers, was that it meets the "needs of commerce" in accurate credit reporting; so much so that the Circuit underscored

---

[3] While *Cahlin* was superseded in part—by statute amending § 1681n—as recognized in *Santos v. Healthcare Revenue Recovery Grp., LLC*, 85 F.4th 1351, 1362 (11th Cir. 2023), the decision remains good law otherwise, with the *Erickson* decision citing it favorably on the issue of accuracy under the FCRA. *See Erickson*, 981 F.3d at 1252.

[4] Courts in other circuits have reached similar conclusions. *See Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020) (rejecting argument that CRA "violated the FCRA because it had favorable information about his Capital One card, omitted it from his credit report, and thereby harmed his creditworthiness," because users "relying on credit reports have no reason to believe that a credit report reflects all relevant information on a consumer"); *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (explaining that it would be unreasonable to require the reporting of additional information that would have made the credit report "fully precise" and citing the Federal Trade Commission for the notion that "consumer reporting agencies are not required to include all existing or derogatory or favorable information about a consumer in their reports"); *Aclys Int'l, LLC v. Equifax, Inc.*, No. 2:08-CV-00954, 2010 WL 1816248, at *3 (D. Utah May 5, 2010) ("[The] FCRA does not require credit reporting agencies to include all relevant information about an individual, only that the information present on a credit report be accurate."), *aff'd sub nom., Aclys Int'l v. Equifax*, 438 F. App'x 689 (10th Cir. 2011).

that "the very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Id.* Thus, the Eleventh Circuit concluded that the foregoing standard of accuracy "should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate reporting." *Id.*

Turning to the case at bar, Plaintiff maintains that Defendant's credit file and reports on the Accounts are inaccurate because they do not include the timely payments Plaintiff in fact made between 2022 and 2024. Turning to Defendant's snapshot of the Accounts in its credit file for Plaintiff, it shows the following:

**AMERICAN EXPRESS #**[redacted]**** ( PO BOX 981537, EL PASO, TX 79998, (800) 874-2717 )

**Date Opened:** 04/07/2022
**Responsibility:** Individual Account
**Account Type:** Open Account
**Loan Type:** CREDIT CARD
**Date Updated:** 03/21/2025
**Pay Status:** ›Charged Off‹
**Terms:** Paid Monthly
**Date Closed:** 09/07/2024
**High Balance:** High balance of $13,732 from 11/2024 to 03/2025
**Estimated month and year that this item will be removed:** 04/2031

| | 03/2025 | 02/2025 | 01/2025 | 12/2024 | 11/2024 | 10/2024 | 09/2024 |
|---|---|---|---|---|---|---|---|
| Balance | $12,146 | $12,146 | $12,146 | $12,146 | $12,146 | | |
| Scheduled Payment | | $0 | $0 | $0 | $0 | | |
| Amount Paid | | $0 | $0 | $0 | $0 | | |
| Past Due | $2,480 | $2,361 | $2,242 | $2,123 | $1,965 | | |
| Remarks | AID/CBG/PRL | AID/CBG/PRL | AID/CBG/PRL | CBG/CLA | CBG/CLA | | |
| Rating | C/O | C/O | C/O | COL | COL | X | COL |

AMERICAN EXPRESS #[redacted]**** ( PO BOX 981537, EL PASO, TX 79998, (800) 874-2717 )

Date Opened: 06/01/2022
Responsibility: Individual Account
Account Type: Open Account
Loan Type: CREDIT CARD
Date Updated: 03/20/2025
Pay Status: >Charged Off<
Terms: Paid Monthly
Date Closed: 09/07/2024
High Balance: High balance of $4,340 from 11/2024 to 03/2025
Estimated month and year that this item will be removed: 05/2031

To dispute online go to: http://transunion.com/disputeonline

Page: 2 of 14

Consumer Credit Report for TRACY LAMAR HARRIS II

File Number: [redacted] Date Issued: 04/15/2025

| | 03/2025 | 02/2025 | 01/2025 | 12/2024 | 11/2024 | 10/2024 |
|---|---|---|---|---|---|---|
| Balance | $4,340 | $4,340 | $4,340 | $4,340 | $4,340 | |
| Scheduled Payment | | $0 | $0 | $0 | $0 | |
| Amount Paid | | $0 | $0 | $0 | $0 | |
| Past Due | $1,179 | $1,141 | $1,103 | $1,026 | $876 | |
| Remarks | AID/CBG/PRL | AID/CBG/PRL | AID/CBG/CLA | CBG/CLA | CBG/CLA | |
| Rating | C/O | C/O | COL | COL | COL | COL |

AMERICAN EXPRESS #[redacted]**** ( PO BOX 981537, EL PASO, TX 79998, (800) 874-2717 )

Date Opened: 02/09/2022
Responsibility: Individual Account
Account Type: Revolving Account
Loan Type: FLEXIBLE SPENDING CREDIT CARD
Date Updated: 03/11/2025
Pay Status: >Charged Off<
Terms: Paid Monthly
Date Closed: 09/07/2024
High Balance: High balance of $9,071 from 11/2024 to 11/2024; $9,344 from 12/2024 to 12/2024; $9,383 from 01/2025 to 03/2025
Credit Limit: Credit limit of $0 from 11/2024 to 03/2025
Estimated month and year that this item will be removed: 04/2031

| | 03/2025 | 02/2025 | 01/2025 | 12/2024 | 11/2024 | 10/2024 |
|---|---|---|---|---|---|---|
| Balance | $9,383 | $9,383 | $9,383 | $9,344 | $9,071 | |
| Scheduled Payment | | $0 | $0 | $0 | $0 | |
| Amount Paid | | $0 | $0 | $0 | $0 | |
| Past Due | $2,253 | $2,128 | $1,769 | $1,455 | $1,138 | |
| Remarks | AID/CBG/PRL | AID/CBG/PRL | AID/CBG/CLA | CBG/CLA | CBG/CLA | |
| Rating | C/O | C/O | COL | COL | COL | COL |

[Doc. 9-1.] The Rating Key included in the snapshot shows that the "C/O" and "COL" ratings indicate that the Account has been charged off and placed with collections, respectively. [*Id.*] Meanwhile, the Remark Key shows that "AID" stands for account information disputed by consumer, that "CBG" stands for account closed by creditor, that "PRL" stands for unpaid balance charged off, and "CLA" stands for account placed for collection. [*Id.*]

Although neither Defendant nor the Court's own research has identified a case directly on point, following the Eleventh Circuit's direction in *Erickson* and *Cahlin*, the Court can find no inaccuracy in the foregoing. As an initial matter, Plaintiff has identified no technically or factually inaccurate information whatsoever, and thus, the Court is left to consider only whether the tradelines' omission of Plaintiff's prior payments is objectively misleading—that is, whether it would mislead its intended user as to the meaning or implication of the tradelines to Plaintiff's creditworthiness. *Erickson*, 981 F.3d at 1252. For the reasons that follow, the undersigned concludes that it does not.

Turning back to the snapshot of Plaintiff's credit file, it demonstrates, among other things, that:

- Plaintiff opened the Accounts in February, April, and June 2022;
- the Accounts' balances reached their highest balances in November 2024;
- the past due amounts as of November 2024 were only a fraction of the total balances on the Accounts;
- American Express closed the Accounts in September 2024 and placed them in collections by no later than November 2024;
- Plaintiff disputed the accuracy of the tradelines in January 2025; and
- American Express charged off the accounts in January and February 2025.

[Doc. 9-1.] Defendant's credit information on Plaintiff thus makes clear that the Accounts were active in 2022 and 2023 and that they were not closed until September 2024. It also shows that the "past due" status in November 2024 was less than 20 percent of the total balance on each Account. Together, these facts would appear to demonstrate that Plaintiff had active Accounts with American Express for at least a year and a half before November 2024, and that he must have made some payments on those Accounts, since only a small fraction of the total balance for each was past due and the Accounts were not closed and sent to collections until late 2024.

In other words, the obvious and necessary implication of the information contained in Plaintiff's credit file with Defendant is that Plaintiff in fact made positive payments on the Accounts at points between 2022 and November 2024, exactly what Plaintiff complains Defendant's reports do not show. Given this, the Court finds no basis to conclude that Defendant's reporting—omitting as it does the specific dates and amounts of Plaintiff's payments on the Accounts—makes it "objectively likely to mislead its intended user" as to Plaintiff's creditworthiness due to that omission. *Erickson*, 981 F.3d at 1252. It shows, again, as Plaintiff complains it does not, that he opened multiple credit card accounts with American Express; used and paid off balances on the cards during 2022,

2023, and some of 2024; and ultimately defaulted on his payments sometime in 2024, with the Accounts' balances reaching into the tens of thousands of dollars by the time the Accounts were closed in 2024. As a result, the Court finds that omission of those specific details regarding Plaintiff's positive payment history does not amount to an inaccuracy under the FCRA.

This conclusion is bolstered by existing authority on inaccuracies under the FCRA alleged as a result of the omission of information. For instance, in *Walker v. Experian Information Solutions, Inc.*, the plaintiff primarily argued that the CRA's characterization of his payments as "late" was inaccurate because his creditor, Chase, admitted to "mistakenly chang[ing] the billing address on his Account," and waived the late fees, "thereby acknowledging the error." No. 1:23-CV-5027-LMM-JSA, 2024 WL 4649357, at *1, 7 (N.D. Ga. Aug. 28, 2024), *report and recommendation adopted*, 2025 WL 911385 (N.D. Ga. Mar. 19, 2025). The court there acknowledged that Chase "could have handled things better," and that it failed to "engage[] in ideal levels of customer relations or communication," but nevertheless held that "the apparent mix-up does not mean that the Account statements were void or that payments were not due as stated," or the plaintiff was denied "opportunities to avoid the late payments." *Id.* at *7-8. As a result, the court found no inaccuracy, whether technically or based upon the report

creating a "misleading impression about his credit worthiness," and observed that if the plaintiff wished to, he still had right to include an explanatory statement in his credit report whereby he could "provide potential creditors with both sides of the story to allow creditors to reach an independent determination of how to treat specific, disputed account." *Id.* at *8 (citation omitted). Thus, while additional information might have cast the *Walker* plaintiff's delinquency in a better light, there was no obligation by the CRA to include all possible positive information in its credit reporting. The same goes for Plaintiff's delinquencies in this case—while the details of his positive payments *might* have helped present him in a better light, it is still apparent from Defendant's reporting that the Accounts were utilized for years, but that Plaintiff was ultimately unable to keep up with payments in 2024, resulting in the charge off of tens of thousands of dollars, which Defendant accurately reported.

Similar outcomes result in cases involving the reporting of credit accounts and mortgages subject to forbearance plans or bankruptcies. In *Felts v. Wells Fargo Bank, N.A.*, for example, the Eleventh Circuit held that a creditor-furnisher was entitled to judgment as a matter of law because the undisputed facts did not demonstrate that any inaccuracy was present. *See* 893 F.3d 1305, 1318 (11th Cir. 2018). The plaintiff there had entered into an unemployment forbearance that

allowed her to make substantially reduced payments on her mortgage loan, in return for which, the lender agreed not to foreclose on her home. *Id.* at 1309-10. The plaintiff made the forbearance payments, then became current once she found a new job, and soon after, she in fact paid off the entire mortgage loan balance. *Id.* at 1310. Despite this, the creditor reported her status as "past due" for the months in which she made payments in the reduced amount. *Id.* at 1310, 1318. The Eleventh Circuit concluded that the past due label was not inaccurate, because the forbearance agreement never modified the terms of the mortgage note, which the plaintiff was not in compliance with; and her "apparent compliance with the terms of a second, separate agreement"—that is, the forbearance plan—was irrelevant to the information the creditor was actually reporting—her compliance with the terms of the mortgage note. *Id.* at 1314. In the end, the Circuit held, the plaintiff was past due and delinquent on her obligations under the note, irrespective of her partial payments, making the report accurate. *Id.* at 1315; *see also Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *4 (D. Md. May 2, 2006) (where bank furnished information regarding plaintiff's late payment to CRA despite plaintiff having enrolled an assistance program which excused him from making timely payments, CRA's report of late payments was not misleading), *aff'd sub nom.*

*Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007). Similarly, in *Bolich v. Nelnet Servicing, LLC*, the plaintiff took out several student loans but failed to make payments for five months. No. 8:21-CV-886-CEH-AEP, 2023 WL 4489954, at *2 (M.D. Fla. July 12, 2023). While he was retroactively granted a hardship forbearance, that forbearance plan did not change the terms of the loans, and so the furnisher continued to report a delinquency irrespective of the subsequent forbearance. *Id.* at *2. Citing *Felts* and *Cahlin*, the court found that it "would be misleading to prospective lenders to erase the historical fact that Plaintiff was unable to meet his payment obligations, vitiating the 'very economic purpose for credit reporting companies,'" and explained that the "relevant information to prospective creditors" was "that he owed and missed the August 2018 payment, irrespective of Nelnet's decision to clear the past-due amounts when it granted him the subsequent forbearance." *Id.* at *6-7 (quoting *Felts*, 893 F.3d at 1319 and citing *Cahlin*, 936 F.2d at 1158). So too here. The Accounts' tradelines, "when viewed in [their] entirety and context, it does not create an incorrect impression," *Bolich*, 2023 WL 4489954, at *5; rather, they accurate reflect that Plaintiff, after a year or more of actively using his American Express credit cards, became delinquent to the tune of nearly $26,000 [*see* Doc. 9-1]. And as discussed, the

relevant information for prospective users is the delinquency, irrespective of Plaintiff's partial payments prior to it.

Likewise, in relation to bankruptcies, "courts have held that after a debt is discharged, a CRA may report a $0 balance on an account and need not continue to report post-bankruptcy payments because the debtor no longer has personal liability on the account." *Steinmetz v. Am. Honda Fin.*, 447 F. Supp. 3d 994, 1005 (D. Nev. 2020) (citing *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014)); *see also Reichardt v. Trans Union LLC*, No. CV-18-00223-TUC-RCC, 2019 WL 1359119, at *3 (D. Ariz. Mar. 26, 2019); *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 674-75 (E.D. Penn. 2015). So even though noting post-discharge payments might present such consumers in a better light, those payments were made to stave off foreclosure, and do not change the fact of the bankruptcy and discharge, which extinguished the debt. *Groff v. Wells Fargo Home Mortg., Inc.*, 108 F. Supp. 3d 537, 542 (E.D. Mich. 2015). Plaintiff's claims here should fair no better—his prior payments do not change the fact that his delinquencies rapidly overcame them and resulted in the Accounts' closure.

And these results are typical. For instance, in *Williams v. Nelnet Business Solutions, Inc.*, the court found that the inclusion of historical information about the plaintiff's payment history in the account status field—showing that the

account was 120 to 149 days late—was neither inaccurate nor misleading where the report also showed the accounts were closed and listed with a zero-dollar balance. *See* No. 1:20-cv-1063-LMM-CCB, 2021 WL 2589022, *3-4 (N.D. Ga. Jan. 14, 2021), *report and recommendation adopted*, 2021 WL 2587973 (N.D. Ga. Mar. 2, 2021). The furnisher "was not required to provide information in the manner most favorable to Plaintiff and fulfilled its duty by providing objectively accurate information." *Id.* at *4 (quoting *Baker v. Pinnacle Credit Union*, No. 1:19-cv-3455, 2020 WL 4696713, *4 (N.D. Ga. Aug. 13, 2020)). And in *Alston v. PNC Bank, N.A.*, the court rejected the argument that the failure to report *prior* credit limits on an account makes a report of only the credit holder's *present* credit limit misleading. No. CV 23-1230-BAH, 2024 WL 3937255, at *4 (D. Md. Aug. 26, 2024). In other words, the lack of a comprehensive account or payment history is of no matter when the report, viewed as a whole, does not mislead the user about the status of the account.

Finally, a number of decisions from this Circuit and elsewhere have rejected the argument that a CRA's omission of a credit account's date of first delinquency—that is, identifying when the consumer first failed to make timely payments—amounts to a misleading omission, so long as the balance and payment information that is shown is correct. *See, e.g.*, *Harding v. Transunion LLC*,

No. 23-23775-CIV, 2024 WL 4826448, at *8 (S.D. Fla. Nov. 19, 2024), *appeal dismissed for want of prosecution*, No. 24-14006-CC, 2025 WL 733104 (11th Cir. Jan. 15, 2025); *Gadson v. Experian Info. Sols., Inc.*, No. 2:23-CV-00029-BHH-MHC, 2024 WL 3745476, at *7 (D.S.C. July 18, 2024), *report and recommendation adopted*, 2024 WL 3742464 (D.S.C. Aug. 9, 2024) ("To the extent [the consumer] is asserting that [the CRA] should have identified on the consumer report the [date of first delinquency] for each account, [the consumer] has not pointed to any law requiring [the CRA] to expressly include that information in the report, nor has she shown that its omission makes the report patently incorrect or misleading in such a way and to such an extent that it can be expected to have an adverse effect, particularly where the reported payment history is correct.") (cleaned up). And the parallels with Plaintiff's Accounts' tradelines—omitting Plaintiff's full payment history and the precise build-up of his balances until his delinquencies—are clear; those tradelines still show the date the Accounts were opened, include accurate balance information, and correctly identify that the Accounts are now closed and charged off. The result should not be different for Plaintiff's claims.

In the end, the "[f]urnishing accurate historical information" about Plaintiff's Accounts, even if not their entire history, "neither changes the accuracy

of the report nor causes any confusion regarding [Plaintiff]'s account status." *Marshall v. Robins Fin. Credit Union*, No. 5:19-CV-260 (MTT), 2020 WL 620575, at *3 (M.D. Ga. Feb. 10, 2020). And there is no authority that the parties have identified or that the Court has found in its own research that suggests CRAs have a duty to include all positive payment information that would place a consumer's ultimate delinquency in a somewhat more favorable light. *See Cahlin*, 936 F.2d at 1158 (holding that a CRA has no duty to disclose "only that information which is favorable or beneficial to the consumer"); *Statements of General Policy or Interpretations Under the Fair Credit Reporting Act,* 16 C.F.R., Subchapter F, Pt. 600, Appendix, pp. 492–519 (official interpretation of section 1681e(b) by the Federal Trade Commission ("FTC"), the administrative agency charged with enforcement of the FCRA) ("Consumer reporting agencies are not required to include all existing or derogatory or favorable information about a consumer in their reports."). "The Court's task is to consider whether the information is inaccurate or misleading, 'not to look for ways that the information might be more accurate.'" *Silber v. TransUnion, LLC*, No. 23-CV-07182 (NSR) (JCM), 2025 WL 588620, at *4 (S.D.N.Y. Feb. 24, 2025) (where plaintiff "incurred adverse notations on his credit file because of his mistaken expectation that autopayments would continue," reports of missed payments were not inaccurate

or misleading for not providing additional information) (quoting *Lamando v. Rocket Mortg.*, No. 3:23-CV-147 (MAD/ML), 2024 WL 264034, at *8 (N.D.N.Y. Jan. 24, 2024)); *see also Hom v. TransUnion, LLC*, No. 23-CV-81513, 2024 WL 3829971, at *2 (S.D. Fla. Aug. 15, 2024) (citing *Braun v. Trans Union LLC*, No. 19-CV-06098, 2019 WL 13083348, at *1 (C.D. Cal. Oct. 19, 2019) ("A [CRA's] failure to provide additional information to explain the significance of an otherwise accurate report entry is not the type of misleading omission that is sufficient to fulfill the inaccuracy element of [an FCRA claim]."). Defendant's reporting of the Accounts, when viewed in its entirety and context, contains no technically inaccurate information and does not create an incorrect impression as to Plaintiff's creditworthiness. As a result, Plaintiff has not alleged any inaccuracy to support a claim under either § 1681e(b) or § 1681i(a), and his claims are therefore subject to dismissal.

**2. Plaintiff's § 1681g Claim**

Under § 1681g(a)(1) of the FCRA, CRAs must, "upon request . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). In support of this claim, Plaintiff alleges simply that his full payment history on the Accounts was missing from Defendant's disclosures to him. (*See* Compl., Count III.)

Plaintiff does not, however, ever allege (1) that he requested his full consumer file (alleging instead that he merely disputed the Accounts' reporting), or (2) that the full payment history was actually included in his file but not disclosed to him. (*See generally*, Compl.) And without such allegations, Plaintiff's claim under § 1681g fails as a matter of law. *See Byrd v. Equifax Consumer Servs., LLC*, No. 1:19-CV-4417-CAP-RGV, 2019 WL 11343566, at *4 (N.D. Ga. Nov. 14, 2019) (failure to allege specific facts to support the nature and scope of request for credit file or information contained in files required dismissal of § 1681g claim), *report and recommendation adopted*, 2019 WL 11422015 (N.D. Ga. Dec. 11, 2019); *see also Henderson v. InfoMart, Inc.*, No. 1:14-CV-1609-SCJ-LTW, 2014 WL 12284041, at *4 (N.D. Ga. Aug. 15, 2014) (dismissing § 1681g claim because there were no allegations supporting that CRA maintained the subject information), *report and recommendation adopted*, 2014 WL 12465410 (N.D. Ga. Sept. 2, 2014); *see also Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 774 (11th Cir. 2006) ("Congress did not intend to require disclosure of the consumer's complete file as the consumer report following reinvestigation."). Accordingly, Plaintiff's § 1681g claim also fails.

#### 3. Plaintiff's § 1681s-2(b) Claim

Plaintiff's final claim is brought pursuant to § 1681s-2(b) of the FCRA, alleging that Defendant failed to correct the omission of his positive payment history on the Accounts. (Compl., Count IV.) But by its own terms, that section applies only to furnishers. *See* 15 U.S.C. § 1681s-2 ("Responsibilities of *furnishers* of information to consumer reporting agencies.") (emphasis added); *see also id.* at § 1681s-2(b) (requiring that *furnishers* correct and update information provided to CRAs). And because Defendant is a CRA, not a furnisher, Plaintiff's claim under § 1681s-2(b) also fails as a matter of law.

#### 4. Summary

Because, as set forth above, each of Plaintiff's asserted claims fails to state a plausible claim for relief, Defendant's motion for judgment on the pleadings should be **GRANTED**.

## III. MOTION FOR LEAVE TO AMEND

While Plaintiff did not respond to the motion for judgment on the pleadings, he has filed a motion for leave to amend. [Doc. 11.] Rule 15 provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A court, however, may deny leave where a proposed amendment would be futile, *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008), that is, "when the complaint as amended would still be properly dismissed," *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

In his proposed amended complaint, Plaintiff adds conclusory allegations that the "reporting of the [A]ccounts," among other things, "contains an inaccurate balance," "an inaccurate status," "inaccurate delinquency information," and "inaccurate dispute information." (Proposed Am. Compl. [Doc. 11 at 5-19] ¶¶ 10-13.) He also newly alleges that he was denied a personal loan with a Lightstream, a division of Truist, as a result of Defendant's reporting on the Accounts. (*Id.* ¶¶ 20-21.) However, the only specific inaccuracy Plaintiff mentions—namely, that the "Trans Union report on these Accounts did not reflect the positive payment history that Plaintiff had achieved from 2022 through 2024"—leaves the gravamen of Plaintiff's proposed amended complaint identical to his original complaint. (*Id.* ¶ 16.) Plaintiff again asserts claims under §§ 1681e(b) and 1681i(a), but appears to concede that his claims under §§ 1681g and

1681s-2(b) are without support, dropping the latter from his causes of action. (*See id.* ¶¶ 30-45).

Unfortunately for Plaintiff's motion, his generic allegations that Defendant "reported or maintained inaccurate information, without providing any factual specificity" in identifying such inaccuracies, "will not suffice" to save his claims. *Jefferson v. TransUnion, LLC*, No. 5:24-CV-44, 2025 WL 308130, at *3 (S.D. Ga. Jan. 27, 2025). Courts have repeatedly rejected such general allegations of inaccuracy as mere conclusions that do not "permit the court to infer more than the mere possibility of misconduct" under *Twombly* and *Iqbal*. *See id.* (citing *Iqbal*, 556 U.S. at 679). As a result, "if a consumer fails to set forth facts supporting a plausible," as opposed to a merely possible, "showing of an inaccuracy in a credit report, the consumer, as a matter of law, has not established a FCRA violation[.]" *Paulino v. W. Funding II Inc.*, 737 F. Supp. 3d 1338, 1346 (S.D. Fla. 2024).

Here, Plaintiff's newly proposed allegations include no facts to support any specific inaccuracy in Defendant's credit report other than the omission of the payment history on the Accounts, which as discussed above, does not amount to an inaccuracy under the FCRA. As a result, Plaintiff's proposed amendments fail to satisfy the Rule 8(a)(2) standard and are therefore futile, and his old

allegations still fail for the reasons set forth above. Therefore, Plaintiff's motion for leave to amend is due to be **DENIED**.

## IV. PLAINTIFF'S SECOND AMENDED COMPLAINT

A week following the submission of Plaintiff's motion for leave to amend—that is, one week after briefing was completed on the motion—Plaintiff filed a "Revised Proposed Secod [sic] Amended Complaint." [Doc. 14.] Plaintiff does not include any motion, but simply filed it as a "Notice" to the Court. [*Id.* at 1.] But because the time period for amending as a matter of right has expired, Federal Rule of Civil Procedure 15 requires that he obtain Defendants' written consent or this Court's leave to amend, by way of motion,[5] before he may amend again. *See* Fed. R. Civ. P. 15(a)(2). Because he has done neither, the Clerk is **DIRECTED TO STRIKE** Plaintiff's second amended complaint. [Doc. 14.] *See Leslie v. Wells Fargo Bank, N.A. (Inc.)*, No. 1:22-CV-3983-ELR-JEM, 2023 WL 4049319, at *3 (N.D. Ga. Apr. 27, 2023) (collecting cases in which unauthorized complaints were stricken).

---

[5] Under Federal Rule of Civil Procedure 7, "[a] request for a court order must be made by motion" and "state with particularity the grounds for seeking the order."

And even if Plaintiff had moved for leave to file the second amended complaint, it would almost certainly have been denied because it does not cure any of the deficiencies identified above. And to the extent that it includes allegations about events that arose ***after*** this suit was filed—including (1) what he contends was misreported information about a Guardian Credit Union account and (2) that in May 2025, Defendant failed to respond properly to another request for is credit file [*see* Doc. 14-1 at 9-10, 17-18]—those new allegations must be presented in a *supplemental* complaint (with permission of the court), not an *amended* one, *see* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."); *see also Francis ex rel. Est. of Francis v. Northumberland Cnty.*, 636 F. Supp. 2d 368, 383 (M.D. Pa. 2009) ("[T]here is distinction between amending a pleading and supplementing a pleading. Amending a pleading involves entirely replacing the earlier pleading with a new pleading containing matters that occurred prior to the filing of the original pleading, while supplementing a pleading involves merely adding to the original pleading events occurring subsequent to the earlier pleading.").

## V. OPPORTUNITY TO REPLEAD

All that said, where it appears that a more carefully drafted complaint might state a plausible claim for relief, a *pro se* plaintiff should ordinarily be given an opportunity to amend the complaint before the court dismisses his claims. *De Souza v. JPMorgan Chase Home Lending Div.*, 608 F. App'x 776, 781 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). Thus, while Plaintiff's complaint, in its current state, gives little indication he can state a plausible claim for relief, Plaintiff should be permitted **<u>one, final opportunity</u>** to seek leave to amend (or supplement) the complaint to correct the deficiencies identified in this order and allege specific facts that support his putative claims under 15 U.S.C. §§ 1681e(b) and 1681i(a).[6] And unless Plaintiff properly seeks leave file a

---

[6] Under Federal Rule of Civil Procedure 11:

> By presenting to the court a pleading . . . an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(3). The Rule goes on to state that:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

supplement his complaint, his amended complaint must be limited to factual transaction at issue in his original complaint—namely, his dispute with Defendant about its reporting of his American Express Accounts. **If Plaintiff fails to file an amendment (or supplement) that addresses the deficiencies identified in this order, the undersigned will recommend dismissal of this case**. *See Abimbola v. Broward Cnty.*, 266 F. App'x 908, 909-10 (11th Cir. 2008) (dismissing complaint after giving plaintiff one chance to replead because plaintiff failed to follow the court's instructions on how to replead); *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 276 (11th Cir. 2008) (same).

## VI. MOTION TO STAY

Defendant has moved for a stay pending the Court's disposition of its challenge to Plaintiff's allegations. [Doc. 10.] Plaintiff has filed no response, indicating that he does not oppose the motion. *See* LR 7.1B, NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion.").

Federal Courts have broad discretion to stay proceedings as part of their inherent authority to control their docket and ensure judicial economy. *Clinton*

---

Fed. R. Civ. P. 11(c)(1). Plaintiff is therefore warned that if he files an amended (or supplemental) complaint, he will be certifying that the factual allegations in that complaint were formed upon a reasonable inquiry, and if the Court determines that they were not, he will open himself up to sanctions.

*v. James*, 520 U.S. 681, 706-07 (1997); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."); *see also Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990) (matters pertaining to discovery are committed to the sound discretion of the trial court, and reviewed under the abuse of discretion standard). Moreover, the Eleventh Circuit has:

> warned of the dangers of allowing a case to proceed through the pretrial processes with a potentially invalid claim, stating "[t]hus, when faced with a motion to dismiss a claim for relief that significantly enlarges the scope of discovery, the district court should rule on the motion before entering discovery orders, if possible."

*Lawrence v. Governor of Ga.*, No. 17-11564, 2018 WL 259213, at *2 (11th Cir. Jan. 2, 2018) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997)).

The undersigned concludes that, in order to preserve both Court's and the parties' resources, the exercise of this Court's discretion is warranted here, and all discovery and pretrial deadlines in this case should be stayed until the Court issues its final ruling on Defendant's pending dispositive motion. Defendant's motion is therefore **GRANTED** [Doc. 10], and discovery and pretrial deadlines are **STAYED** pending further Court order.

## VII. CONCLUSION

In sum, it is **RECOMMENDED** that Defendant's motion for judgment on the pleadings be **GRANTED** [Doc. 8] and that Plaintiff's motion for leave to amend be **DENIED** [Doc. 11], but that Plaintiff be given **one, final opportunity** to move for leave to file an amended or supplemental complaint that cures the deficiencies outlined in this report and recommendation within **fourteen (14) days** of the District Judge's order ruling on this report and recommendation. Further, the Clerk is **DIRECTED** to **STRIKE** Plaintiff's second amended complaint. [Doc. 14.] Finally, Defendant's motion to stay is **GRANTED**. [Doc. 10.]

IT IS SO ORDERED AND RECOMMENDED this 23rd day of May, 2025.

JOHN K. LARKINS III
United States Magistrate Judge