IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRACY HARRIS,

     Plaintiff,

v.

TRANSUNION, LLC,

     Defendant.

CIVIL ACTION FILE NO.:

1:25-cv-192-MLB-JKL

### **ORDER**[1]

This consumer case, arising under the Fair Credit Reporting Act ("FCRA"),

is presently before the Court on Plaintiff Tracy Harris's motion for leave to file

an amended and supplemental complaint ("Motion to Amend"), following the

Court's order granting Defendant TransUnion, LLC's motion for judgment on

---

[1] Magistrate judges are authorized to issue rulings as to any pretrial matter pending in a civil case upon referral from the presiding district court judge, but with respect to certain case-dispositive motions, magistrate judges are authorized only to issue a Report and Recommendation to the district court judge. 28 U.S.C. § 636(b)(1)(A). A motion seeking leave to amend is not listed as one of the categories of motions that magistrate judges lack authority to issue final rulings, and "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court under the 'clearly erroneous standard.'" *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (internal citations omitted); *see also Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 548 (11th Cir. 2010); *Palmore v. Hicks*, 383 F. App'x 897, 899-900 (11th Cir. 2010).

the pleadings but allowing Plaintiff one opportunity to move for leave to replead his complaint. [*See* Doc. 21 (Plaintiff's motion for leave); *see also* Docs. 15, 19, 20 (dismissing Plaintiff's prior claims).] For the reasons that follow, Plaintiff's Motion to Amend is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion is **DENIED** with respect to his claims under 15 U.S.C. §§ 1681e(b) and 1681i(a), but **GRANTED** with respect to his single claim under 15 U.S.C. § 1681g.

## I.   BACKGROUND

Plaintiff filed this FCRA case on December 6, 2024, in the Superior Court of Gwinnett County.[2] [*See* Doc. 1-1.] Following service, Defendant removed the action to this Court on January 16, 2025 [Doc. 1]; and on January 23, 2025, it answered the complaint [Doc. 3]. Then, on April 15, 2025, Defendant moved for judgment on the pleadings. [Doc. 8.] On April 22, 2025, Plaintiff moved for leave to amend. [Doc. 11.]

---

[2] Plaintiff has been a serial filer of consumer cases of late. *See, e.g.*, *Harris v. Midland Credit Mgmt., Inc.*, No. 1:24-cv-5355 (N.D. Ga.); *Harris v. CKS Prime Invs., LLC*, No. 1:24-cv-3284 (N.D. Ga.); *Harris v. Midland Credit Mgmt. Inc.*, No. 1:24-cv-1073 (N.D. Ga.); *Harris v. FBCS Inc.*, No. 1:24-cv-0970 (N.D. Ga.); *Harris v. Transworld Sys. Inc.*, No. 1:23-cv-5253 (N.D. Ga.); *Harris v. Experian Info. Sols., Inc.*, No. 1:23-cv-3742 (N.D. Ga.); *Harris v. Experian Info. Sols.*, No. 1:23-cv-3201 (N.D. Ga.); *Harris v. Hunter Warfield, Inc.*, No. 1:23-cv-1379 (N.D. Ga.); *Harris v. FBCS, Inc.*, No. 1:23-1234 (N.D. Ga.); *Harris v. Equifax, Inc.*, No. 1:23-cv-0985 (N.D. Ga.).

As explained in the undersigned's May 23, 2025 report and recommendation, the gravamen of Plaintiff's original complaint was that his consumer file with and reports prepared by Defendant included three American Express accounts (the "Accounts") that had "materially inaccurate and incomplete information," which Plaintiff explains were "the omission of payment histor[ies] reflecting consistent and timely payments made by Plaintiff from the [A]ccounts' inception in 2022 through most of 2024." [*See* Doc. 1 ¶¶ 10-11.]  The undersigned concluded, however, that because Defendant's credit file and reports accurately showed the time periods over which Plaintiff used the Accounts, along with the timing and amount of his subsequent delinquencies and the Accounts' ultimate charge-offs by American Express, Plaintiff had not identified any legally actionable inaccuracies or misleading omissions in his file, and therefore could not maintain his claims under the FCRA.  [*See* Doc. 15 at 4-24.] The Court also explained in that May 23 recommendation that Plaintiff's first proposed amended complaint, which merely added conclusory allegations like— the "reporting of the [A]ccounts," among other things, "contains an inaccurate balance," "an inaccurate status," "inaccurate delinquency information," and "inaccurate dispute information [*see* Proposed Am. Compl. [Doc. 11 at 5-19] ¶¶ 10-13]—was insufficient because:

> such general allegations of inaccuracy a[mount to] mere conclusions that do not "permit the court to infer more than the mere possibility of misconduct" under *Twombly* and *Iqbal*. As a result, "if a consumer fails to set forth facts supporting a plausible," as opposed to a merely possible, "showing of an inaccuracy in a credit report, the consumer, as a matter of law, has not established a FCRA violation[.]"

[Doc. 15 at 28 (quoting *Jefferson v. TransUnion, LLC*, No. 5:24-CV-44, 2025 WL 308130, at *3 (S.D. Ga. Jan. 27, 2025) and *Paulino v. W. Funding II Inc.*, 737 F. Supp. 3d 1338, 1346 (S.D. Fla. 2024))]. Based on the foregoing, the undersigned recommended that Defendant's motion for judgment on the pleadings be granted, that Plaintiff's claims be dismissed, and that Plaintiff's motion for leave to amend be denied. [*See* Doc. 15.] Nevertheless, the undersigned concluded that, given Plaintiff's *pro se* status, rather than dismiss his action entirely, he should be afforded one final chance to amend and/or supplement his claims, so long as he corrected the deficiencies identified above and followed the Court's instructions on repleading. [*Id.* at 31-32.] On July 30, 2025, the District Court adopted the undersigned's report and recommendation as the opinion of the Court, and directed Plaintiff to move for leave to amend or supplement if he wished to persist in this action.[3] [Doc. 20.]

---

[3] In the interim, and ignoring the Court's instructions on when to move for repleader, Plaintiff also filed motions for leave to amend and supplement, which were denied as both procedurally improper and substantively deficient. [*See*

## II.    MOTION TO AMEND

On August 8, 2025, Plaintiff filed the present Motion to Amend.  [Doc. 21.] In his presently proposed amended and supplemental complaint (the "Repleaded Complaint" [*see* Doc. 21-2]), Plaintiff alleges that around November 2024, he submitted a dispute to Defendant, identifying "incomplete and inaccurate information" in his credit file—"specifically the incompleteness of the payment history."  [*Id.* ¶¶ 38-41.][4]  According to Plaintiff, Defendant either "transmitted" or "did NOT transmit" all the relevant information from his dispute to the furnisher, but in any event, it "fail[ed] to conduct a reasonable reinvestigation" into his dispute, and some, unidentified "inaccurate, unverifiable, and/or incomplete" information remains in his credit file with Defendant.  [*Id.* ¶¶ 42-52.]  Based upon these allegations, Plaintiff asserts FCRA

---

Doc. 19.]  Thus, including his original complaint [Doc. 1], his proposed amended complaint [Doc. 11], a proffered second amended complaint that was struck [Doc. 14-1], his improper third amended complaint [Doc. 17-1], his improper supplemental complaint [Doc. 18-1], and his present proposed amendment [Doc. 21-2], Plaintiff has presented six different pleadings to the Court.

[4] The Court does not include immaterial allegations Plaintiff makes, such as those complaining about the consumer reporting industry writ large [Doc. 21-2 ¶¶ 2-3, 7, 10, 20-23, 28-30], those setting out legal authority [*id.* ¶¶ 4-5, 8, 12-13, 31-37, 70-71, 73]; or those making conclusory assertions without any specific factual content [*id.* ¶¶ 9, 23-27, 45-51].

claims under 15 U.S.C. §§ 1681e(b), 1681i(a)(1), 1681i(a)(5), 1681i(a)(5)(A), and 1681i(a)(7).  [*Id.*, Counts I, III through VII.]

Plaintiff also alleges that when he requested a copy of his credit file in May 2025, Defendant omitted "full account numbers," "payment history," and other unidentified "account information" from at least five identified tradelines in the consumer file it supplied him with.  [Doc. 21-2 ¶¶ 55-67.]  Plaintiff alleges that Defendant was in fact supplied with all of the missing information by the relevant data furnishers [*id.* ¶¶ 61, 67], and that Defendant had the information in its possession and supplies it to other third parties [*id.* ¶¶ 62, 63].  Plaintiff brings a single cause of action associated with this purported violation under § 1681g(a).  [*See id.*, Count II.]

Defendant opposes leave to amend and supplement, arguing (1) that Plaintiff's proposed amendments and supplements would cause undue delay and unduly prejudice Defendant under Federal Rule of Civil Procedure 15; and (2) that Plaintiff's proposed pleading remains futile, warranting dismissal with prejudice.  [Doc. 22.]  Plaintiff has filed no reply, and the time for doing so has expired.  Accordingly, the Motion to Amend is ripe for review.

## III.   ANALYSIS

Rule 15 provides that "[a] party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 further states that "[t]he court should freely give leave when justice so requires."  *Id.*  A court, however, may deny leave where a proposed amendment would be futile.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).  A "proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777 n.10 (11th Cir. 2000); *see also Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commnc'ns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) (amendment is considered futile if a "cause of action does not state a claim upon which relief can be granted").  The court may also exercise its discretion to deny leave to amend where there is undue delay, bad faith, or allowing the amendment would cause undue prejudice to another party.  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).

7

The Court starts with Defendant's delay and prejudice arguments before taking up its contention that Plaintiff's claims are futile.  On futility, the Court first addresses Plaintiff's claims premised on Defendant's alleged failure to properly investigate his dispute, before turning to his claim that Defendant failed to disclose his entire consumer file.

## A.    There is No Undue Delay or Prejudice

To start, the Court is unconvinced by Defendant's argument that allowing Plaintiff to amend would cause undue delay or unduly prejudice Defendant. "'The mere passage of time, without anything more, is an insufficient reason to deny leave to amend.'"  *U.S. ex rel. Crutcher v. First Guaranty Mortg. Corp.*, No. 1:16-CV-3812-TWT, 2023 WL 4034197, at *3 (N.D. Ga. June 15, 2023) (quoting *In re Engle Cases*, 767 F.3d 1082, 1118 (11th Cir. 2014)).  And otherwise, Defendant's argument that Plaintiff has unduly delayed seeking amendment is undeveloped—it merely argues by assertion that amendment would "only cause undue delay," but never explains why or how.  [Doc. 21 at 5-6.]  And contrary to Defendant's argument, after the Court granted its motion for judgment on the pleadings, Plaintiff moved for leave to amend and supplement in less than a week's time.  Based on this, the Court finds no evidence that undue delay has

already occurred, and sees no indication that any delay is forthcoming from this amendment.[5]

The Court is also not persuaded that Defendant would be unduly prejudiced by being "forced to file another Rule 12 motion—a motion to dismiss—as to the similarly defective Supplemental and Amended Complaint."

---

[5] The District Court's July 30, 2025 order on the undersigned's report and recommendation also stated that:

> If Plaintiff does file a new motion to amend his complaint within the 14-day period, the parties' briefing should address whether the motion is subject to Rule 16(b)'s "good cause" requirement—given the scheduling order in this case—and, if so, whether that standard is met here. *See* Fed. R. Civ. P. 16(b); *Hix v. Acrisure Holdings, Inc.*, 2022 WL 17538687 (N.D. Ga. Dec. 8, 2022); (Dkts. 5; 6). The parties should also address whether Plaintiff's proposed amendment is appropriate in the light of other applicable law (including Rule 15) and the Magistrate Judge's prior findings and instructions (Dkts. 15; 19).

Despite this direction, neither Plaintiff nor Defendant addresses whether Plaintiff has demonstrated "good cause" under Rule 16(b). [*See* Docs. 21, 22.] Regardless, because the undersigned finds that Plaintiff's request for leave to amend is due to be denied as futile as to his claims under 15 U.S.C. §§ 1681e(b) and 1681i(a), the Court need not address whether his request for leave to amend also satisfies Rule 16(b)'s requirement as to those claims. Plaintiff's claim under 15 U.S.C. § 1681g, meanwhile, is brought as a proposed supplement, and a review of Rule 15(d), the parties' joint preliminary report and discovery plan [Doc. 5 at 7], and the Court's scheduling order [Doc. 6], show that the parties' anticipated that Plaintiff would seek to supplement his complaint and that no limitation was set on the time period for doing so. Even if there had been, Plaintiff sought leave to assert the claim soon after it became ripe in May 2025 [*see* Doc. 14], showing he acted with adequate diligence in asserting the claim.

[Doc. 21 at 5-6.]  Any motion to dismiss would simply mirror Defendant's arguments that the Repleaded Complaint is futile, and the Court addresses those arguments below.  In other words, there is no reason Defendant should need to file such a motion.  And finally, Defendant's suggestion that "[a]llowing yet another futile amendment would prolong litigation, increase costs, and undermine judicial efficiency," misses the mark.  For the reasons explained below, the Repleaded Complaint is not entirely futile, and the concerns identified are part and parcel of any lawsuit that survives the pleading stage.

Ultimately, at this very early stage of the litigation, where discovery has not yet commenced, the Court cannot find that Defendant has "shown the type of undue [delay or] prejudice that would warrant preclusion of amendment here."  *Crutcher*, 2023 WL 4034197, at *3.

**B.    Plaintiff's Claims under §§ 1681e(b), 1681i(a)(1), 1681i(a)(5), 1681i(a)(5)(A), and 1681i(a)(7) of the FCRA are Futile**

As the undersigned thoroughly explained in the May 23 report and recommendation, claims brought pursuant to §§ 1681e(b) and 1681i(a) of the FCRA require that the plaintiff-consumer present allegations tending to demonstrate that a CRA prepared a report containing inaccurate information. [*See* Doc. 15 at 7-10.]  Significantly, too, the undersigned carefully reviewed existing authority to conclude that the lack of a consumer's entire historical

payment history—omitting, as Plaintiff alleges, the specific dates and amounts of Plaintiff's payments on the relevant accounts—would not be objectively likely to mislead its intended user as to Plaintiff's creditworthiness, and therefore did not amount to an inaccuracy under the FCRA. [*Id.* at 11-24.] Despite this, in relation to his §§ 1681e(b) and 1681i(a) claims, Plaintiff fails to identify any inaccuracy other than the lack of full payment history he identified in his original complaint; indeed, he admits that the dispute he submitted with Defendant was based entirely upon the missing payment history. [*See* Doc. 21-2 ¶¶ 39, 41.] Thus, for the reasons already explained in the Court's May 23 report and recommendation, Plaintiff again fails to allege any inaccuracy in his consumer report with Defendant, and thus, his claims under §§ 1681e(b) and 1681i(a) are futile. Leave to amend should therefore be **DENIED** as to Plaintiff's claims under those subsections of the FCRA (Counts I, Counts III through VII).

### C.     Plaintiff's Claim under § 1681g

Under § 1681g(a)(1) of the FCRA, CRAs must, "upon request . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). In his Repleaded Complaint, Plaintiff alleges he requested his full consumer file, but that Defendant omitted certain account information—in particular, the "full account

numbers" and "payment history"[6]—from the consumer file disclosure it made to Plaintiff. [Doc. 21-2 ¶¶ 55-60, 68.] Plaintiff alleges that the full account numbers and payment history were furnished to Defendant and contained within Plaintiff's file when he requested it, and alleges that the full account numbers and payment history are included within its reports to third parties. [*Id.* ¶¶ 61-64, 67.] Based upon this, Plaintiff asserts that Defendant failed to comply with § 1681g(a)(1) when it disclosed Plaintiff's consumer file to him upon his request. [*Id.* ¶¶ 65, 79-81, 86-88.]

Defendant first argues that Plaintiff's § 1681g(a)(1) is futile because he "merely suspects that [Defendant] somehow 'did not disclose ALL of the information regarding Plaintiff['s] accounts,'" but lacks "any factual allegations to support" this assertion. [Doc. 22 at 13 (citing Doc. 21-2 ¶ 65).] In support, Defendant has cited numerous cases in which, it states, "district courts confronted with nearly identical allegations have held that such barebones allegations are too speculative to survive a motion to dismiss." [*Id.* at 14 (collecting authority).] Reviewing that authority, however, shows that the

---

[6] Plaintiff states generally that there is "missing account information" but only identifies the account numbers and payment history as missing. [See Doc. 21-2 at 55-82, 86-88.]

allegations in those cases never specifically identified what information was allegedly missing from the consumer's credit file disclosure.  Instead, in each case, the plaintiff merely alleged that the disclosure was incomplete, without explaining how; and in most of the cases, the plaintiff disclaimed any personal knowledge of what the contents of the consumer file were—and thus, also disclaimed any actual knowledge of what was missing.[7]  *See Egbufoama v. Experian Info. Sols., Inc.*, No. 1:24-CV-1655-ELR-JSA, 2024 WL 5093081, at *2 (N.D. Ga. Oct. 11, 2024) (generic allegations that disclosure was not complete without any specific facts identifying what was missing), *report and recommendation adopted*, 2024 WL 5339325 (N.D. Ga. Oct. 30, 2024); *Joseph v. Experian Info. Sols., Inc.*, No. 1:18-CV-03443-WMR-RGV, 2019 WL 5458009, at *6 (N.D. Ga. July 3, 2019) (plaintiff alleged speculatively—"on information and belief"—only that some "archived information" and/or "negative codes" that "may have been" or "might be" provided to third parties but were not disclosed to plaintiff, but admitting plaintiff "had no direct knowledge of specific information regarding himself that might be in [d]efendants' file(s)"), *report and recommendation adopted*, 2019 WL 5460659 (N.D. Ga. Aug. 13, 2019); *see also Heyer v. Experian Info. Sols. Inc.*,

---

[7] Indeed, all but two of the cases appear to have involved identical allegations from what is likely a form complaint found on the internet.

13

No. 19-C-15, 2019 WL 2869337, at *4 (E.D. Wis. July 3, 2019) (same allegations as *Joseph*) ("Regarding the negative codes and erroneous information, Heyer only alleges that the defendants' responses "may" have included such information . . . . Moreover, Heyer does not allege that the defendants report negative codes to creditors, insurers, or employers that it does not also include in the plain language of a consumer disclosure."); *Johnson v. Experian Info. Sols., Inc.*, No. 218CV114JAMEFBPS, 2019 WL 951425, at *2 (E.D. Cal. Feb. 27, 2019) (same allegations as *Joseph*) ("Significantly, plaintiff does not identify any specific information that was wrongfully withheld, nor does he provide any basis for his belief that defendants failed to provide him with all information in his file."); *Gavin v. Trans Union LLC*, No. CV71800523DCCJDA, 2018 WL 7824443, at *4 (D.S.C. Sept. 24, 2018) (same allegations as *Joseph*), *report and recommendation adopted as modified*, 2019 WL 1330795 (D.S.C. Mar. 25, 2019); *Frazier v. Experian Info. Sols., Inc.*, No. CV JKB-18-0067, 2018 WL 3785131, at *2, 5 (D. Md. Aug. 9, 2018) (same allegations as *Joseph*) ("Plaintiff contends that 'there is substantial information relating to [her] that is contained in all Defendants' files that has not been disclosed to her,'" while also admitting that that "she has 'no direct knowledge'" of the files' contents.); *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *7 (S.D. Fla. June 29, 2018) (same allegations as *Joseph*)

14

("Plaintiff does not point to what information is actually missing from what he received from Defendants or what specific facts lead him to accuse Defendants of failing to meet their disclosure requirements under the FCRA."); *cf. Scott v. Equifax, Inc.*, No. 2:20-CV-2516-HLT-JPO, 2021 WL 7209985, at *3 (D. Kan. Apr. 21, 2021) (observing that plaintiffs alleged that a full disclosure was not made, "[b]ut nowhere in the complaint do Plaintiffs specify what information or data Defendants failed to provide").

In contrast to those cases, Plaintiff's Repleaded Complaint alleges that the full account numbers and payment history for at least five tradelines were contained in his consumer file with Defendant, that Defendant provides that information—full account numbers and payment history—to third parties when it produces consumer reports on Plaintiff, and that the information was missing from its disclosure to Plaintiff.  [Doc. 21-2 ¶¶ 60-65.]  As a result, the foregoing authority cited by Defendant is distinguishable, since in those cases, every specific allegation about missing information was admittedly and obviously speculative—conditioned by "upon information and belief" caveats, the words "may" or "might" in each instance, and the plaintiffs' admission that he "had no direct knowledge of specific information regarding himself that might be in [d]efendants' file(s)."  To the contrary here, Plaintiff clearly alleges that the

15

accounts numbers and payment histories were in his file, were produced to other third parties, yet were missing from Defendant's disclosure to him. [*Id.*]

Moreover, in a very recent decision, United States Magistrate Judge Christopher C. Bly confronted a proposed amended complaint against Defendant[8] with very similar allegations to Plaintiff's Repleaded Complaint:

> In the proposed amended complaint, Plaintiff adds additional factual allegations about the information that was not included in the "limited 'consumer disclosure'" provided by Defendant in response to his request for disclosure of his full consumer file. Specifically, Plaintiff alleges that Defendant's disclosure "concealed key account details by providing only masked and incomplete account numbers, preventing Plaintiff from verifying and disputing reported accounts." Plaintiff specifies that tradelines for his First Premier Bank, MRV Bank, and TBOM accounts "contained incomplete or redacted account numbers." Plaintiff also alleges that Defendant's disclosure "failed to include: Internal notes or archival data related to previously disputed accounts, Historical payment data that is otherwise reported to third parties, Full inquiry history, including suppressed inquiries visible only to creditors.

*Rawls v. Trans Union, LLC*, No. 1:24-CV-3948-VMC-CCB, 2025 WL 2429105, at *3 (N.D. Ga. Aug. 5, 2025), *report and recommendation adopted*, No. 1:24-CV-3948-VMC-CCB, Doc. 27 (N.D. Ga. August 17, 2025). In ruling on the motion to amend, Judge Bly rejected Defendant's arguments—the same ones presented here—that the pleading was futile, explaining:

---

[8] Represented there by the same counsel as it is in this case.

16

Here, Defendant argues that the proposed amended complaint would still be subject to dismissal because it, like the initial complaint, merely speculates that some unknown information is missing from Plaintiff's credit file without specifying what was not disclosed.

. . .

As noted by Defendant, district courts within the Eleventh Circuit have found that complaints are too speculative and fail to state a plausible claim for relief under Section 1681g where the plaintiff "fails to provide a factual basis for his assertion that what he received from [the defendant consumer reporting agency (CRA)] was not his full consumer file disclosure." *Egbufoama v. Experian Info. Sols., Inc.*, No. 1:24-CV-1655-ELR-JSA, 2024 WL 5093081, at *2 (N.D. Ga. Oct. 11, 2024), *adopted by* 2024 WL 5339325 (N.D. Ga. Oct. 30, 2024); *see also Joseph v. Experian Info. Sols., Inc.*, No. 1:18-cv-03443-WMR-RGV, 2019 WL 5458009, at *6-9 (N.D. Ga. July 3, 2019) (collecting cases and dismissing the amended complaint for failing to plausibly allege why the CRAs' responses did not constitute the full credit file), *adopted by* 2019 WL 5460659 (N.D. Ga. Aug. 13, 2019); *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178-ALTONAGA/Seltzer, 2018 WL 3360754, at *7 (S.D. Fla. June 29, 2018) (dismissing the amended complaint where the plaintiff only speculated as to what information the CRA failed to include).

However, the proposed amended complaint differs materially from the insufficient complaints in *Egbufoama*, *Joseph*, *Scott*, and similar cases cited by Defendant.  In *Egbufoama*, the plaintiff alleged only that the defendant "provided only partial credit reports, failing to include the entirety of the consumer information maintained in its systems," without pointing to any information that was actually missing. 2024 WL 5093081, at *2 (alteration omitted).  Similarly, in *Joseph*, the plaintiff alleged that the defendant only disclosed his credit report but that the plaintiff "had reason to believe" there was more information contained in the defendant's files that was not disclosed, although the plaintiff "had no direct knowledge of specific information."  2019 WL 5458009, at *3.  In *Scott*, the plaintiff

17

asserted "upon information and belief" that "substantial information" in the defendant's files had not been disclosed to him. 2018 WL 3360754, at *2. And similarly to the plaintiffs in *Joseph* and *Scott*, Plaintiff here alleges in the proposed amended complaint that Defendant's disclosure of his file failed to include "Internal notes or archival data related to previously disputed accounts, Historical payment data that is otherwise reported to third parties, [and] Full inquiry history, including suppressed inquiries visible only to creditors."

However, Plaintiff also specifically alleges that Defendant's disclosure "concealed key account details by providing only masked and incomplete account numbers, preventing Plaintiff from verifying and disputing reported accounts." Plaintiff specifies that tradelines for his First Premier Bank, MRV Bank, and TBOM accounts "contained incomplete or redacted account numbers." In *Washington v. Equifax*, a judge in the Middle District of Tennessee considered a similar claim that a credit reporting agency (CRA) violated 15 U.S.C. § 1681g because it reported an incomplete account number for one of the plaintiff's accounts. No. 3:19-cv-00154, 2019 WL 2443126 (M.D. Tenn. June 12, 2019). The court found that, at the motion-to-dismiss stage, it was not clear whether the plaintiff's file showed an incomplete account number because the furnisher reported a truncated account number to the CRA or because the CRA itself truncated the account number. Id. at *2. The court ultimately found that:

> [t]he plain language of the statute requires that the consumer reporting agency shall 'clearly and accurately disclose to the consumer [ ] [a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.

*Id.* at *3. I find *Washington* to be persuasive and on point. Here, Plaintiff has alleged that the disclosure Defendant sent to him

> contained three redacted or truncated account numbers. As in *Washington*, it is not clear at this early stage whether Defendant redacted the account numbers or whether the furnishers reported redacted account numbers to Defendant, but this allegation of specific information that Defendant failed to disclose is enough to state a plausible claim.

*Rawls*, 2025 WL 2429105, at *3. And so it goes here. And while Defendant argues that *Washington* (cited by *Rawls* above and by Plaintiff's Repleaded Complaint[9]) should be disregarded because it is "out-of-circuit" and "pre-dates" the body of case law discussed above, *Rawls* is not. And for the reasons already explained, the body of case law cited by Defendant is simply not applicable here, where Plaintiff has affirmatively and specifically alleged that the full account numbers and payment histories were truncated or missing from specifically identified tradelines in his consumer file, while also alleging that the full numbers and

---

[9] The Court pauses to note that Plaintiff's citation to *Washington* is incorrect—Plaintiff cites to 2019 WL 2492006 [*see* Doc. 21-2 ¶ 70], when the appropriate Westlaw citation is 2019 WL 2443126. While the Court might otherwise overlook such an error if it were made in isolation, this is not the first time Plaintiff has miscited authority. In *Harris v. Capital Management Services, LP*, Case No. 1:24-cv-5355-MLB-JKL, in his response to the defendant's motion for summary judgment, Plaintiff cited an opinion the Court could not locate and quoted a statement that could not be found in another opinion cited. *See id.*, Doc. 34; *see also id.*, Doc. 36 (order identifying problems). And most troubling, when the Court scheduled oral argument to address the issue, Plaintiff simply dismissed the action. *See id.*, Docs. 36, 37, 38. **Plaintiff is warned that continued citation to authority that does not exist may lead to sanctions, including the dismissal of his case**.

19

histories were in fact disclosed to Defendant by furnishers and supplied by Defendant to third parties in consumer reports about Plaintiff.[10]

In the end, the undersigned is persuaded by *Washington* and *Rawls*. Plaintiff has identified specific information—account numbers and/or payment histories—that were truncated or missing from specific accounts in Defendant's disclosure of his consumer file, and also alleges that the missing information was disclosed to Defendant and in fact contained in its file on him. Only after the benefit of discovery can the Court say whether such information was in fact in Defendant's consumer file for Plaintiff and whether Defendant improperly failed to disclose it to Plaintiff. But for now, Plaintiff has plausibly alleged that Defendant failed to disclose information in violation of § 1681g(a)(1).

Next and finally, Defendant contends briefly[11] that Plaintiff has not alleged any damages traceable to its alleged conduct, and therefore has alleged only a "'statutory violation divorced from any real world effect.'" [Doc. 22 at 21-22 (citing *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017).] But

---

[10] Because Plaintiff alleges that the information was provided to Defendant and contained in its consumer file for Plaintiff, Defendant's argument that it is not required to "affirmatively add credit data to a report" [*see* Doc. 22 at 19-21] is unavailing.

[11] That is, in a two-sentence paragraph.

that is not true.  Plaintiff alleges that without the account numbers, in particular, he cannot "understand his credit report and reconcile it with his own records" and cannot determine "whether the[] report is accurate"; and as a result, he has experienced "significant frustration and emotional distress," "loss of sleep," and "mental anguish."   [Doc. 21-2 at 65-66, 72, 74, 82.]   And, of course, "[a]ctual damages" for an FCRA violation include both economic damages as well as noneconomic damages such as emotional distress.  *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1124-25 (11th Cir. 2006); *see also Carlisle v. Nat'l Com. Servs., Inc.*, No. 1:14-CV-515-TWT-LTW, 2017 WL 1075088, at \*15 (N.D. Ga. Feb. 22, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 1049454 (N.D. Ga. Mar. 20, 2017), *aff'd*, 722 F. App'x 864 (11th Cir. 2018).  Accordingly, Plaintiff has alleged actual damages traceable to Defendant's conduct, and this argument is therefore without merit.

In sum, Plaintiff's § 1681g claim adequately alleges that Defendant failed to provide all the information in Plaintiff's consumer file upon his request, and

21

that the omission of data cause him injury.  As a result, his request for leave to supplement[12] his complaint with this claim should be **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend is **GRANTED IN PART AND DENIED IN PART**.  [Doc. 21.]  Plaintiff's motion is **DENIED** with respect to his claims under 15 U.S.C. §§ 1681e(b) and 1681i(a), but **GRANTED** with respect to his single claim under 15 U.S.C. § 1681g.

Plaintiff is **DIRECTED** to file a final, repleaded complaint within **fourteen (14) days** of the date of this Order that includes only his § 1681g claim and the factual allegations asserted in support of it.

IT IS SO ORDERED this 20th day of October, 2025.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[12] As noted previously, because the events underlying this claim occurred after the data Plaintiff filed his original complaint, the addition of this claim is a supplementation rather than an amendment.